**Will ROGERS, Appellant,**

v.

**CROSSROADS NURSING SERVICE, INC., Appellee.**

**No. 13-98-363-CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1999.

Rehearing Overruled March 9, 2000.

---

**418**

O. F. Jones, III, Victoria, for appellant.

Lynette Maniss Frederick, Thomas F. Nye, Linda C. Breck, Brin & Brin, Corpus Christi, for appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

J. BONNER DORSEY, Justice.

Crossroads Nursing Services, Inc. provided home health care to Will Rogers while he recuperated from back surgery. Rogers alleges that a Crossroads employee negligently placed a heavy supply bag on a table close to him that fell and re-injured his back. He sued Crossroads for the employee's conduct under the theory of common law negligence.

The trial court dismissed Rogers' suit because he failed to provide an expert report to Crossroads in accordance with the Medical Liability Insurance Improvement Act (MLIIA). *See* TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01 (Vernon Supp. 1999). Rogers appeals the dismissal of his suit, contending the action is for common law negligence and *not governed by the Act. See id.* at art. 4590i et seq. We agree.

The MLIIA was enacted in 1977 to alleviate a perceived medical malpractice insurance crises by reforming health care liability laws to ensure affordable health care by reducing medical malpractice insurance rates. *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(a)(5), (b) (Vernon Supp. 1999). The Act applies only to "health care liability claims," that are defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other *claimed departure from accepted standards of medical care or health care or safety* which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* at § 1.03(a)(4) (emphasis added).

█ Crossroads contends that Rogers' suit based on negligent placement of a supply bag amounts to a "claimed departure from accepted standards of . . . safety," and is within the definition. However, the word "safety" cannot be read in isolation, and the phrase "accepted standard of . . . safety" must be read in context to mean "accepted standard of safety *within*

*the health care industry."* Because the question of how to place a heavy supply bag in a patient's home so as not to injure the patient is not governed by an accepted standard of safety within the health care industry, but rather is governed by the standard of ordinary care, we find that Rogers' cause of action for negligence is not a health care liability claim but is one for common law negligence. Accordingly, we hold that the Act does not apply to this cause of action and reverse and remand for trial.

## I.

■ The Act states that it is intended to "make certain modifications to the liability laws as they relate to health care liability claims *only* and with an intention of the legislature *not to extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law." See id.* at § 1.02(b)(7) (emphasis added). This statement limiting the scope of the Act requires that the term "health care liability claim" be restricted to its plain meaning in light of the goals and policies of the Act in order not to unduly modify tort law. This implies that all contacts between a health care professional and a patient are not subject to the Act, but only those that directly involve the giving of medical or health care.

## II.

The Act requires that expert reports be made and filed to justify the plaintiff's action in bringing suit. It requires the expert be qualified under the Act. *See* art. 4590i, § 13.01(5), (6), § 14.01 *et seq.* As such, the expert must either be a physician meeting certain qualifications (which are spelled out in the Act), or an expert in health care. *Id.* The Act defines an expert in non-physician health care as "an expert who has knowledge of accepted standards of care for the diagnosis, care, treatment of the illness, injury, or condition involved in the claim." *Id.* at § 13.01(5)(B). Requiring the expert to have knowledge of the

standards of care for "the diagnosis, care, [or] treatment" has no applicability to injuries claimed to have been caused by negligence other than that involving "the diagnosis, care, [or] treatment". If a claim that does not directly involve the diagnosis, care or treatment of the patient were be subject to the Act, no expert would be qualified under the Act to testify, and the action could not be prosecuted.

One of the rules of statutory construction is to construe the entire Act, reading each part of it so that one part does not conflict with another and to harmonize its various provisions. In harmonizing the provisions of the Act requiring an expert report and defining who can be an expert with it's definition of "health care liability claims", the only reasonable interpretation is that a departure from accepted standards of safety means safety in the diagnosis, care or treatment.

## III.

■ The accepted standard of care for a medical negligence case is that level of care that would have been used by a reasonably prudent physician similarly situated with the defendant in circumstance, training and experience. *See Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977). These standards are promulgated by the health care industry; and are not a matter of common knowledge about which a lay witness would be competent to testify. *See* MICHAEL PENICK, 44 TEXAS PRACTICE: MEDICAL MALPRACTICE § 17.1, at 266 (noting that "standards of care" are standards promulgated by the medical community itself); § 17.4, at 268 (noting that standards applicable to health care providers may be found in pamphlets published by health care organizations, journal articles, books, policy and procedure manuals, etc., and may be accessed through Medline, directories and encyclopedias, and by contacting relevant health care organizations) § 17.14, at 276 (noting that a source of standards for home nursing care is the American Nurses Association's *Standards of Home*

*Health Nursing Practice*, which establishes standards for the organization of home health nursing services, data collection, diagnosis, planning, intervention, evaluation, continuity of care, interdisciplinary collaboration, professional development, research and ethics).

On the other hand, a cause of action for ordinary negligence is a claim that a defendant breached the standard of ordinary care. *See* REST. (2D) TORTS § 282, 283 (1965); *cf. St. John v. Pope*, 901 S.W.2d 420, 423 (Tex.1995) (noting that a person always has a duty to exercise reasonable care to avoid injuring others). Reasonable care is that which would be exercised by an ordinary prudent person under the circumstances, and requires no further definition by experts.

Does the proper placement of a heavy bag on a table require expertise in the medical or health care fields? We think not.

## IV.

Finally, our construction of the definition of "health care liability claim" under the Act squares with guiding authority from the Texas Supreme Court on a similar issue. *See generally Sorokolit v. Rhodes*, 889 S.W.2d 239, 243 (Tex.1994). In *Sorokolit*, the Texas Supreme Court recognized the principle that the Act does not apply to causes of action against a physician or health care provider that are not founded upon a breach of an accepted standard of care. *Id.*

The court pointed out that claims that are "health care liability claims" may not be "recast" as other causes of action in order to avoid requirements of the Act. *Id.* at 242. The underlying nature of the claim determines whether it is truly a health care liability claim, and thus governed by the Act. *Id.* As one court has noted, "[i]f the cause of action is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than a health care liability claim, no matter how the plaintiff labels it." *Wright v. Fowler*, 991 S.W.2d 343, 352 (Tex.App.— Fort Worth 1999, no pet.); *see also Earle v. Ratliff*, 998 S.W.2d 882, 892–93 (Tex. 1999) (holding that plaintiff's DTPA causes of action were actually negligence claims because they all complained of Earle's failure to hold to the applicable standard of care).

Just as a health care liability claim may not be recast as another cause of action to avoid the operation of the Act, a claim that does not involve a departure from accepted standards of medical or health care is not covered by the Act.

## CONCLUSION

Using the *Sorokolit* model, we look to the underlying nature of Rogers' claim to determine its true character. The specific conduct of which Rogers complains is the placement of a supply bag on a table in his home. We believe that the true nature of Rogers' complaint is that Crossroads breached the standard of ordinary care rather than that Crossroads breached an accepted standard of safety in the health care industry. Therefore, Rogers' true cause of action is for ordinary negligence rather than for breach of an accepted standard of safety within the health care industry. Because we find that Rogers' cause of action is not a "health care liability claim," as defined by the Act, the Act's requirements do not apply. We REVERSE the judgment of dismissal and REMAND this case for further proceedings consistent with this opinion.