# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00800-CV

**Margaret Torres Wilson and Joe Bob Wilson, Appellants**

**v.**

**Austin Nursing Center, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS, 98TH JUDICIAL DISTRICT
### NO. 98-07092, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING

This appeal arises from the dismissal of a Ahealth care liability claim@ filed against appellee Austin Nursing Center, Inc. (the ACenter@) by appellants Margaret Torres Wilson (AMrs. Wilson@) and her son, Joe Bob Wilson (collectively, the AWilsons@). The Wilsons urge essentially two points on appeal: (1) they challenge the district court=s plenary jurisdiction to render the dismissal with prejudice order in the face of their nonsuit, and (2) they challenge the basis for the dismissal under the Medical Liability and Insurance Improvement Act (AMLIIA@) because their lawsuit did not involve a breach of accepted standards of health care. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(d), (e) (West Supp. 2002). We will affirm the order of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mrs. Wilson was an elderly resident of the Center whose leg was broken on May 21,1998 while she was in a wheelchair at the Center. The Wilsons notified the Center of Mrs. Wilson=s potential

health care liability claim pursuant to the MLIIA.[1] They filed a negligence suit against the Center on July 8, 1998, based on the wheelchair incident (the A1998 Lawsuit@). They claimed that Mrs. Wilson sustained serious bodily injuries because Awhile [she] was seated in her wheelchair, the chair was made to move abruptly, thereby causing her leg to strike a portion of the table, resulting in personal injuries to her.@

When the Wilsons failed to file an expert=s report or otherwise comply with article 4590i, section 13.01(d), regarding sanctions for failure to file a report, the Center moved to dismiss the 1998 Lawsuit. *See id.* ' 13.01(d), (e). In its motion, the Center quoted the language of section 13.01(e), and prayed for a dismissal of the suit Ain its entirety.@ Outside of quoting the statutory language, the Center=s motion did not specifically pray for any of the relief delineated in section 13.01(e), such as attorney=s fees, costs, or dismissal *with prejudice.*

Before the Center=s motion was heard, the Wilsons filed a notice of nonsuit. On June 17, 1999, the district court signed an AOrder Acknowledging Plaintiffs= Non-Suit,@ which ordered that the cause be Adismissed pursuant to Rule 162, without prejudice to Plaintiffs= right to refile.@ The Center=s motion was never heard in the 1998 Lawsuit. No other motions were filed or orders signed that could have extended the district court=s plenary power in the 1998 Lawsuit.[2]

---

[1] Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 4.01 (West Supp. 2002).

[2] A[T]he signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court=s plenary power expires.@ *In re Bennett*, 960 S.W.2d 35, 38 (Tex.

2



1997); *see also Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex. 1995).

Mrs. Wilson apparently remained a patient at the Center until she died on August 18, 1998. On May 27, 2000, her estate filed a second lawsuit against the Center in the same court (the A2000 Lawsuit@). The petition in the 2000 Lawsuit alleged that because of various acts of medical negligence, Mrs. Wilson Adeveloped and suffered from pressure ulcers. These pressure ulcers, [sic] worsened, became infected, and were a significant contributing factor of her death.@ None of the allegations in the 2000 Lawsuit related to the wheelchair incident or Mrs. Wilson=s broken leg, the subject matter of the 1998 Lawsuit.

The Center filed a motion to dismiss in the 2000 Lawsuit seeking dismissal of that lawsuit under section 13.01(e). In its motion, the Center complained that the plaintiffs previously filed the *same* lawsuit under another cause number, and Afailed to file an expert report and curriculum vitae within the statutory time frame@ in the 1998 Lawsuit. The Center alleged that it filed a motion to dismiss the 1998 Lawsuit, but obtained no ruling thereon because plaintiffs nonsuited the action before that motion was heard. The only basis asserted for dismissal of the 2000 Lawsuit was that it was the same claim as asserted in the 1998 Lawsuit in which the plaintiffs had earlier failed to comply with article 4590i. The motion to dismiss in the 2000 Lawsuit was not based on any of the Wilsons= conduct in the 2000 Lawsuit.

The district court held a hearing on the dismissal motion on May 19, 2000. The court ruled that: (1) the 1998 Lawsuit was a Ahealth care liability claim@ within the meaning of article 4590i, section 1.03(a)(4); and (2) the two lawsuits alleged separate claims based upon different occurrences. The court concluded that because article 4590i, section 13.01(e)(3) provides for a dismissal with prejudice as a Asanction@ for failure to file an expert=s report, the nonsuit in the 1998 Lawsuit was ineffective against the

**4**

Center=s first dismissal motion by virtue of the second paragraph of Texas Rule of Civil Procedure 162. *See* Tex. R. Civ. P. 162 (AA dismissal under this rule shall have no effect on any motion for sanctions, attorney=s fees or other costs pending at the time of dismissal.@). Therefore, the district court reasoned, the June 17, 1999 order acknowledging the nonsuit was interlocutory and the motion to dismiss the 1998 Lawsuit remained pending. Accordingly, the district court granted the motion to dismiss Awith prejudice@ in the 1998 Lawsuit and denied the one in the 2000 Lawsuit.[3]

The dismissal of the 1998 Lawsuit is the matter now on appeal. Appellants are Mrs. Wilson (now deceased)[4] and her son, Joe Bob Wilson, who is not a plaintiff in the 2000 Lawsuit.

**DISCUSSION**

*Jurisdiction*

The district court found that the Center=s motion to dismiss qualified as a pending motion for sanctions under Rule 162. *See* Tex. R. Civ. P. 162. Therefore, the district court concluded that the nonsuit was ineffective, the 1998 Lawsuit was still pending, and the motion to dismiss the 1998 Lawsuit was still viable. We agree.

The legal standards for the involuntary dismissal of a health care liability case Awith prejudice@ are found in article 4590i, section 13.01(e) and Rule 162. Section 13.01(e) provides:

---

[3] We note that by the time of the hearing on the Center=s dismissal motions in the 2000 Lawsuit, the two-year statute of limitations had expired with regard to any claims arising from either Mrs. Wilson=s death or the wheelchair incident.

[4] The estate of Mrs. Wilson apparently was never substituted as a party to the 1998 Lawsuit.

If a claimant has failed, for any defendant physician or health care provider, to comply with Subsection (d) of this section within the time required, the court shall, on motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant=s attorney:

(1)   the reasonable attorney=s fees and costs of court incurred by that defendant;

(2)   the forfeiture of any cost bond respecting the claimant=s claim against that defendant to the extent necessary to pay the award; and

(3)   the dismissal of the action against that defendant with prejudice to the claim=s refiling.

Tex. Rev. Civ. Stat. Ann. art. 4590i, 13.01(e) (West Supp. 2002).  Rule 162 provides:

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21a on any party who has answered or has been served with process without necessity of court order.

Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk.  *A dismissal under this rule shall have no effect on any motion for sanctions*, attorney=s fees or other costs, pending at the time of dismissal, as determined by the court.  Any dismissal pursuant to this rule which terminates the case shall authorize the clerk to tax court costs against dismissing party unless otherwise ordered by the court.

Tex. R. Civ. P. 162 (emphasis added).

Rule 162 gives plaintiffs the right to nonsuit a case at any time prior to the introduction of all evidence other than rebuttal evidence. *Aetna Cas. & Sur. Co. v. Specia*, 849 S.W.2d 805, 806 (Tex. 1993).  A trial court has no discretion to refuse to sign an order of dismissal once notice of nonsuit has been filed.  *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997).  However, Rule 162 expressly limits the right to

**6**

nonsuit an entire cause when the defendant has pending a claim for affirmative relief or sanctions. *Id*. A nonsuit has Ano effect@ on pending motions for sanctions. Tex. R. Civ. P. 162.

In some instances, a trial court is allowed to impose sanctions even where the motion for sanctions is filed after the notice of nonsuit is filed. *Scott & White Mem=l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996). The court may not, however, impose sanctions for prejudgment conduct after its plenary power has lapsed. *Bennett*, 960 S.W.2d at 38; *Vera v. Perez*, 884 S.W.2d 182, 184 (Tex. App.CCorpus Christi 1994, no writ); *Jobe v. Lapidus*, 874 S.W.2d 764, 766-68 (Tex. App.C Dallas 1994, writ denied); *Warfield Elec. of Texas, Inc. v. Harry Hines Prop. Venture,* 871 S.W.2d 273, 275 (Tex. App.C Eastland 1994, no writ).

Section 13.01(e) and Rule 162 both require that the Asanctions@ be affirmatively requested on the motion of an adverse party. The plain language of section 13.01(e) does not allow a court to grant sanctions *sua sponte.* Here, the Center did not expressly seek a dismissal with prejudice. Rather, it asked that the suit be dismissed Ain its entirety.@ We must decide whether the Center=s motion was sufficient under the statute and rule.

The opinion in *Martinez v. Lakshmikanth*, 1 S.W.3d 144 (Tex. App.CCorpus Christi 1999, pet. denied) is helpful on this issue. There, the court was faced with the question of whether the legislature=s promulgation of sections 13.01(d) and (e) to article 4590i meant that a simple dismissal, without prejudice, could not be granted later than the 180th day after the filing of suit. The plaintiffs nonsuited Awithout prejudice@ their health-care-liability suit on the 223rd day without having filed an expert=s report or otherwise complying with section 13.01(d). They subsequently refiled their claim in a different court. The

**7**

health-care providers successfully moved to dismiss the second suit with prejudice because of the plaintiffs= failure to timely file an expert=s report in the first suit. The health-care providers argued that sections 13.01(d), (e) and (n) of article 4590i operate to permit nonsuits without prejudice only within the first 180 days of a suit; thereafter only dismissals *with prejudice* are authorized. *Id*. at 147. The court of appeals rejected the argument and held that Asection 13.01(d) does not prohibit a plaintiff from taking a nonsuit after the 180th day.@ *Id.* at 149. The court focused on the language of section 13.01(e), which requires a motion by the defendant before a court is required to dismiss a case Awith prejudice.@ The court reasoned:

> This language places the burden on the defendant doctors to move the trial court to dismiss the claim against them. Upon such motion, the trial court has no discretion but to dismiss the cause of action with prejudice. The Act specifically requires that some affirmative action be taken by the defendant before the court dismisses the cause of action. Failure to make the appropriate motion in a timely manner, effectively *waives* the defendant=s right to the remedy.

*Id.* at 148.

The dismissal motion filed in the 1998 Lawsuit prayed for a dismissal of the suit Ain its entirety.@ The plain language of the statute clearly envisions that to be entitled to dismissal *with prejudice* one must request that disposition. To be entitled to the conclusive effect of a dismissal *with prejudice*, a defendant must specifically request that relief in terms sufficient to put a reasonable person on notice that a disposition on the merits is sought. Although, the Center did not expressly articulate that it requested the relief authorized in section 13.01(e), it quoted the language of section 13.01(e) in the body of the motion. We believe that tracking the precise wording of the statute coupled with a prayer that the suit be dismissed Ain its entirety@ was sufficient to have put the Wilsons on notice that the Center was seeking a dismissal *with*

8

*prejudice*.  Thus, the Wilsons=nonsuit and subsequent dismissal without prejudice was not effective while the Center=s motion seeking a dismissal *with prejudice* was pending and the district court retained jurisdiction to rule on the motion.  The Wilsons=first issue on appeal is overruled.

### *Health Care Liability Claim*

Finally, the Wilsons argue that they were not required to file an expert=s report under section 13.01 because the cause of action in their 1998 Lawsuit, involving the wheelchair incident, was not aAhealth care liability claim@within the meaning of the MLIIA.  They characterize it as primarily a suit for ordinary negligence for which an expert witness is generally not required.  They insist that their suit was not a claim for professional negligence.

A Ahealth care liability claim@is defined in the statute to mean a cause of action against a health care provider or physician Afor treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety@which proximately results in injury or death regardless whether the claim sounds in tort or contract.  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.03(a)(4) (West Supp. 2002).  As discussed earlier, the MLIIA requires that a plaintiff in aAhealth care liability claim@must file an expert=s report, within 180 days of filing the lawsuit, establishing the elements of liability and causation as to each health care defendant; otherwise the lawsuit must be dismissed.  *Id.* ' 13.01(e).  The Wilsons argue that their claim in the 1998 Lawsuit did not constitute aAhealth care liability claim@within the meaning of sections 1.03 and 13.01, therefore, they were not required to file an expert=s report and the sanctions were not authorized.

**9**

To determine whether the Wilsons= claim in their 1998 Lawsuit constituted a Ahealth care liability claim@ within the meaning of the MLIIA, we must examine the specific factual allegations in their petition. *Martinez v. Battle Mem=l Inst*., 41 S.W.3d 685, 691 (Tex. App.CAmarillo 2001, no pet.); *see also MacGregor Med. Ass=n v. Campbell*, 985 S.W.2d 38, 40-41 (Tex. 1998). We look to the underlying nature of the acts or omissions alleged to be the basis of liability to determine whether they can be characterized fairly as claims Afor treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety.@ *See Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994). AHealth care liability claims@ cannot be recast as other causes of action in order to avoid the requirements of the MLLIA. *Sorokolit*, 889 S.W.2d at 242; *Mulligan v. Beverly Enters.-Texas, Inc.*, 954 S.W.2d 881, 884 (Tex. App.CHouston [14th Dist.] 1997, no pet.). If the cause of action is based on a physician or other health care provider=s breach of accepted standards of medical care or treatment, it is a health care liability claim regardless of its label. *Wright v. Fowler*, 991 S.W.2d 343, 352 (Tex. App.CFort Worth 1999, no pet.). Conversely, claims that do not involve a departure from accepted standards of health care are not covered by the MLIIA. *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 420 (Tex. App.CCorpus Christi 1999, no pet.).

The Wilsons rely on *Rogers v. Crossroads Nursing Service, Inc.* as holding that they were not required to comply with the requirement of filing an expert=s report because their claim did not involve a breach of any standard of health care, treatment, or safety. 13 S.W.3d at 420. *Rogers* involved a claim against a company that was providing home health care to the plaintiff, who was recuperating from back surgery. The company=s employee negligently placed a heavy supply bag on a table near the plaintiff which

10

fell, reinjuring the plaintiff=s back.  The plaintiffs sued the company for common law negligence, but the suit was dismissed for failure to provide an expert=s report under section 13.01.

The court of appeals held that the MLIIA did not govern the claim because the issue of how to handle a heavy bag so as not to injure a patient did not implicate Aaccepted standards of safety within the health care industry, but rather is governed by the standard of ordinary care.@  *Id*. at 418-19.  The court noted that not every cause of action against a health care provider or physician involves a breach of accepted professional standards of care or treatment.  *Id*. at 420 (citing *Sorokolit*, 889 S.W.2d at 243). The court explained that accepted standards of medical or health care are promulgated by the health care industry and are based upon what a reasonably prudent physician or health care provider would do in similar circumstances.  *Id*. at 419.  These standards are not within the common knowledge of lay-people; therefore, a medical expert is necessary to establish a claim based on the breach of such a standard.  *Id*. Ordinary care, however, is not defined by experts and is within the common knowledge of ordinary persons.  *Id.*  The court concluded that the Aproper placement of a heavy bag on a table@ does not require the expertise of a medical expert.  *Id*.

The court held that it is the underlying nature of the claim that determines whether it is truly a Ahealth care liability claim@ within the meaning of MLIIA.  *Id*. at 420.  AJust as a health care liability claim may not be recast as another cause of action to avoid the operation of the [MLIIA], a claim that does not involve a departure from accepted standards of medical or health care is not covered by the [MLIIA].@ *Id*.

The Wilsons argue that the claim they made in their 1998 Lawsuit similarly involved a situation governed by ordinary care rather than accepted standards of health care.  They argue that pushing

a person in a wheelchair so as not to break that person=s leg is not a matter involving professional medical

standards about which only a medical expert is qualified to testify.  It is not an act that requires special

knowledge or expertise to know that one should not allow the passenger=s extremities to strike objects in a

manner that breaks bones.  Wheelchairs are not equipment that only medical providers use.  People use

wheelchairs in their homes and in such places as airports and shopping malls.  People without medical

training routinely operate wheelchairs for themselves and others.  Consequently, the Wilsons assert, ordinary

care should govern the act of pushing a person in a wheelchair even if the act occurred in a hospital or

nursing home.

We are limited to the Wilsons= petition in their 1998 Lawsuit to determine the underlying

conduct giving rise to their claim.  Paragraph 5 of the Wilsons= petition states that Mrs. Wilson:

> sustained serious and permanent bodily injuries as a direct result of an incident in which her leg struck a piece of furniture at Defendant=s nursing home.  More specifically, while [she] was seated in her wheelchair, the chair was made to move abruptly, thereby causing her leg to strike a portion of the table, resulting in personal injuries to her . . . .

The petition does *not* allege that at the time of the Aincident@ Mrs. Wilson was being pushed in the

wheelchair by a Center employee.  Actually, it does not even allege that Mrs. Wilson was being pushed or

transported at all; the wheelchair was simply Amade to move abruptly.@  These broad allegations could

include Mrs. Wilson sitting stationary in her wheelchair and being bumped or shoved into a piece of

furniture.

At any rate, we hold that these allegations in the Wilsons= 1998 Lawsuit set forth a claim

that is governed by accepted standards of medical or health care, treatment, or safety, and, thus, by section

**12**

13.01. Mrs. Wilson=s presence in the wheelchair while at the Center, we believe, was an inseparable part of the health care services provided by the Center.[5] While non-health care providers may in limited circumstances use wheelchairs, caring for wheelchair-bound patients is central to the basic functioning of a nursing home. Whether the Center was negligent in handling Mrs. Wilson in a wheelchair goes to the heart of the Center=s care of her.

A patient=s safety while in a wheelchair is central to the professional services which the Center rendered to Mrs. Wilson. It falls within the type of activity that implicates accepted standards of safety within the nursing home industry. *See Rogers*, 13 S.W.3d at 418-19. We believe this fact distinguishes this case from *Rogers*.

Accordingly, we hold that the claim brought by the Wilsons in their 1998 Lawsuit was a Ahealth care liability claim@ within the meaning of sections 1.03 and 13.01 of the MLIIA; therefore, the Wilsons were required, within 180 days after filing that lawsuit, to produce a report by an expert described in section 13.01(r)(5) providing Aa fair summary of the expert=s opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the [Center] failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed@ by the Wilsons. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(r)(6) (West Supp. 2002). The failure to

---

[5] The legislature included nursing homes in the definition of health care providers covered by the MLIIA. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.03(a)(3) (West Supp. 2002).

produce such an expert report, along with a curriculum vitae of the expert made the Wilsons subject to sanctions under the MLIIA. *See id.* ' 13.01(e). We overrule the Wilsons= second issue.

The order of the district court is affirmed in all things.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Patterson and Yeakel

Affirmed

Filed: September 26, 2002

Do Not Publish