Irving W. **MARKS**, Appellant,

v.

**ST. LUKE'S EPISCOPAL HOSPITAL, Appellee.**

No. 01–04–00228–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 3, 2005.

Rehearing Overruled July 27, 2005.

---

James E. Doyle, Doyle, Resptrepo, Harwin & Robbins, LLP, Nancy Kimberly Bohannon, Michael P. Doyle, Doyle Raizner, L.L.P., Michael David Schimek, Houston, TX, for Appellant.

L. Boyd Smith Jr., Jennifer H. Davidow, Vinson & Elkins L.L.P, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

SAM NUCHIA, Justice.

Appellant, Irving W. Marks, appeals from an order dismissing his claims against appellee, St. Luke's Episcopal Hospital ("St.Luke's") for failure to file expert reports as required by statute for "health care liability" claims.[1] We determine whether the claims asserted by appellant in his original petition constitute health-care-liability claims under the meaning of the statute, thereby requiring expert reports within 180 days of filing. We reverse the order dismissing appellant's claims and remand the cause to the court below.

### Statement of Facts

In his original petition, appellant alleged the following facts:

5. On or about March 24, 2000, Irving Marks, a 66–year old man, suffered severe injuries after a fall from his hospital bed at St. Luke's.

6. Mr. Marks was admitted to St. Luke's on March 17, 2000, to undergo treatment for chronic intractable failed back symptomatology and intractable radiculopathy after five lumbar operations failed to cure Mr. Marks' severe back problems.

7. On March 17, 2000, Mr. Marks underwent surgery to implant an intrathecal morphine pump catheter. Immediately following his surgery, Mr. Marks began his morphine treatment with an initial dose of .25 milligrams, and Mr. Marks' morphine doses were raised incrementally up to four milligrams on the ninth day.

8. After his surgery and his morphine treatment, Mr. Marks' condition improved drastically until Mr. Marks fell the night of March 24, 2000.

9. *At the time of his fall, Mr. Marks was getting up from his hospital bed in the middle of the night,* and Mr. Marks was in an upright position sitting at or near the foot of his hospital bed. Mr. Marks placed his hand on the hospital bed's footboard to push himself up to a standing position. *As he was pushing himself up, the hospital bed's footboard fell off causing Mr. Marks to fall to the floor.*

10. Mr. Marks suffered severe personal injuries as a result of the fall.

(Emphasis added.)

Appellant asserted that St. Luke's "breached the duty of ordinary care owed to Mr. Marks" in the following ways:

a. By failing to properly train and supervise any and all agents, employees, servants, and nursing staff when caring for Mr. Marks to prevent and protect him from falls and injuries;

b. By failing to provide Mr. Marks with the assistance he required for daily living activities;

c. By failing to provide Mr. Marks with a safe environment in which to receive treatment and recover; and

d. By providing Mr. Marks with a hospital bed that had been negligently attached and assembled by [St. Luke's] employees, agents, servants or nursing staff.

---

1. *See* Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of Sept. 1, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon Supp.2004–2005)). Because the repealed act was in effect at the time Marks filed this lawsuit, we will refer to it by its former statute designation, article 4590i.

Appellant did not file any expert's report within 180 days of filing his original petition. Appellant's second amended petition alleged additional acts of negligence, including the following:

d. Failing to properly monitor Mr. Marks;

. . . .

h. Failing to ensure that adequate policies and procedures were in place for the hiring, training and supervision of the nursing staff at the hospital; and

i. Failing to ensure that the person(s) hired to work at the hospital had a sufficient understanding of safety concerns for the patients and was competent to formulate policies and procedures for patient safety and quality assurance.

Believing that these additional claims might have asserted health-care-liability claims under Texas law, appellant filed two experts' reports within 180 days of filing this second amended petition. St. Luke's filed a motion to dismiss, arguing that the claims asserted by appellant in his original petition also constituted health care liability claims under the meaning of article 4590i of the Texas Revised Civil Statutes, and that appellant had failed to provide expert reports within 180 days of original filing, as required by that statute. Appellant filed a motion to extend the time for filing the reports, arguing that he did not intend the original petition to assert a heath care liability claim and therefore believed that expert reports were not required. The trial court found that the original petition did assert health care liability claims, denied appellant's motion to extend the time to file expert reports, and granted St. Luke's motion to dismiss.

## Standard of Review

A dismissal under article 4590i is generally reviewed under an abuse of discretion standard. *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied). However, to the extent resolution of this issue requires interpretation of the statute itself, we review under a de novo standard. *Id.* (citing *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989)). The act defines "health care liability claim" as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of Sept. 1, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507 (Vernon Supp.2004–2005)) (hereinafter "article 4590i, § 1.03(a)(4)"). Thus, a health care liability claim is based on a breach of a standard of care applicable to health care providers. *Bush v. Green Oaks Operator, Inc.*, 39 S.W.3d 669, 672 (Tex.App.-Dallas 2001, no pet.). The act requires that a qualified physician or health care expert testify regarding the applicable standard of care, the breach of that standard, and causation of the plaintiff's damages. Art. 4590i, §§ 13.01, 14.01; *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.). The act or omission complained of must be an inseparable part

of the rendition of medical services. *Bush,* 39 S.W.3d at 672. In determining whether a particular case presents a health care liability claim, we must examine the underlying nature of the claim. *Id.* at 672 (citing *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994)). In doing so, we are not bound by the party's own characterization of the claims. *Ponce,* 55 S.W.3d at 38.

## Discussion

■ In his first issue, appellant contends that the trial court erred in finding that his original petition stated a health care liability claim under the meaning of article 4590i. Appellant argues that his original petition asserted claims based on St. Luke's breach of an ordinary standard of care, not a medical standard of care.

In response, St. Luke's contends that Marks pleaded a health care liability claim because (1) the facts pleaded in Marks's original petition are the same facts pleaded in his second amended petition, and Marks admits that the second amended petition states a health care liability claim; (2) Marks alleges that St. Luke's breached medical and safety standards of care applicable to health care providers; and (3) a hospital bed and nursing care are inseparable parts of the medical care of a patient.

Regarding St. Luke's first contention, we are not bound by Marks's characterization of his second amended petition as a health care liability claim. *See Ponce,* 55 S.W.3d at 38. Therefore, the factual similarity between Marks's original petition and his second amended petition is as likely to cast doubt on his characterization of his second amended petition as on his original petition. For the purposes of this appeal, we must look to the underlying nature of his allegations in his original petition.

The basis of Marks's complaint was a footboard that broke loose from Marks's hospital bed, causing Marks to fall to the floor. The underlying nature of his allegations is of an unsafe condition created by an item of furniture. Such a complaint relates to premises liability, not health care liability, and is governed by the standard of ordinary negligence. *See Bush,* 39 S.W.3d at 672 (stating that duty to provide reasonably safe environment or to warn of known danger is owed by premises owner to invitee, not by health care provider to patient); *Rogers,* 13 S.W.3d at 420 (determining that complaint regarding unsafe placement of supply bag related to breach of ordinary care).

In *Rogers,* a home health care employee placed a heavy supply bag on a table near Rogers, who was recuperating from back surgery. 13 S.W.3d at 418. The bag fell on Rogers and re-injured his back. *Id.* The nursing service argued that Rogers's complaint fell within article 4590i because he claimed a departure from accepted standards of safety. *Id.* The court of appeals disagreed, reasoning that the phrase "accepted standard of ... safety," as used in article 4590i, must be read in context as "accepted standard of safety *within the health care industry.*" *Id.* at 418–19. Because the health care industry does not have a safety standard for the placement of heavy supply bags, the court concluded that Rogers's complaint was governed by the standard of ordinary care. *Id.* at 419.

St. Luke's attempts to distinguish the present case from *Rogers* on the basis that the hospital bed is "a piece of medical equipment" and is "inseparable from [Marks's] medical care." We conclude that this case cannot be distinguished on those facts. The bed is no more a piece of medical equipment than a bag full of supplies to be used by a home health care worker in delivering health care services. Furthermore, in our view, the bag of supplies is even more "inseparable from medi-

cal care" than the bed, which may or may not be in use during medical care. Moreover, *Rogers* and the present case are similar in that the underlying nature of the complaint in each—the placement of the bag on the table and the assembly and maintenance of the bed—does not require medical expertise to set forth a standard of care or to determine whether a standard of care has been breached.

St. Luke's argues that Marks's complaint regarding the nursing care and monitoring establishes that he is asserting a health care liability complaint. This argument misstates the nature of Marks's complaint. His complaint regarding the nursing staff—not the nursing care—relates to his fall and injury and the negligent assembly of the bed. These complaints do not implicate the health care provided to Marks. In addition, Marks did not complain about the monitoring until his second amended petition.

■ St. Luke's also refers to the report of Marks's expert as support for St. Luke's contention that Marks's complaint relates to health care liability. However, in determining the underlying nature of Marks's complaint, we look to his pleadings—here, Marks's original petition—and not to other documents, particularly, in this case, an expert report filed in support of Marks's second amended petition. In the absence of special exceptions, we construe the pleadings in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982).

In view of the facts alleged by Marks, we hold that the underlying complaint in Marks's original petition relates to premises liability, not medical liability. We further hold that Marks's complaint in his original petition is governed by an ordinary standard of care. Accordingly, we sustain Marks's first issue.

Having determined that Marks's complaint is based on ordinary negligence, we need not reach Marks's issues complaining of the trial court's extension of the requirement of an expert report to the conduct of cleaning and maintenance staff and the trial court's denial of an extension of time to file expert reports.

We reverse the order dismissing appellant's claims and remand the cause to the court below for further proceedings.