Opinion issued March 15, 2007













 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00652-CV






WALTER M. CLARK, AUDRA M. CLARK AND ANGELA MIRANDA-CLARK, INDIVIDUALLY AND AS REPRESENTATIVES OF THE
ESTATE OF ANITA M. CLARK, DECEASED, Appellants


V.


TIRR REHABILITATION CENTER, Appellee






On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2005-37856






 O P I N I O N


 Appellants, Walter M. Clark, Audra Clark, and Angela Miranda-Clark, in their
individual capacities and on behalf of the estate of Anita M. Clark, deceased, appeal
an order dismissing their suit against appellee, TIRR Rehabilitation Center ("TIRR"). 
In one issue, appellants contend that the trial court erred by dismissing their suit with
prejudice for failure to file an expert report as required by section 74.351 of the Texas
Civil Practice and Remedies Code. (1) 

 We affirm. 

Background

 In 2003, Anita Clark, a 64-year-old woman with osteoporosis, was undergoing
physical therapy at TIRR under the direction of Susan Lilly, a licensed physical
therapist and employee of TIRR. On June 12, 2003, Anita was standing on an
apparatus known as a "balance board," as directed by Lilly. At some point, Lilly
turned away from Anita, leaving her physically unsupported. Anita fell from the
balance board and fractured her pelvis in four places. On March 27, 2004, Anita
died, allegedly from complications stemming from the fall.


 Appellants sued TIRR for negligence. Appellants filed their original petition
on June 10, 2005, an amended petition on November 3, 2005, and a second amended
petition on March 3, 2006. In their second amended petition, appellants alleged that
TIRR, "by and through the acts of its employee," Lilly, left Anita unattended on the
balance board; failed to provide adequate support to Anita to prevent her from falling
from a balance board; failed to keep watch over Anita while she was standing on the
balance board; failed to properly secure Anita against falling from the balance board;
and created a dangerous condition by leaving Anita standing alone on an unstable
balance board with no means of support. Appellants argued that TIRR's negligence
proximately caused serious and permanent injuries to Anita, which ultimately resulted
in her premature death. Appellants did not file an expert report.

 On December 21, 2005, TIRR moved to dismiss appellants' suit on the basis
that it was a healthcare liability claim and therefore subject to the requirements of
Chapter 74 of the Civil Practice and Remedies Code ("Chapter 74"). (2) TIRR argued
that section 74.351 requires a plaintiff in a health care liability suit to file an expert
report within 120 days of filing a claim and that, because appellants failed to file an
expert report by October 8, 2005, the trial court was required to dismiss the suit. (3) 

 In their response to TIRR's motion to dismiss, appellants argued that an expert
report is not required in this case because Chapter 74 does not apply to physical
therapists and because appellants have not alleged a health care liability claim. 
Appellants argued that their suit was for ordinary negligence and that medical
expertise was not required to establish a breach of the standard of care. The trial
court granted TIRR's motion and dismissed the suit with prejudice. Appellants
moved for a new trial, which the trial court denied. This appeal followed.

Analysis

 In one issue, appellants contend that the trial court erred in dismissing their suit
with prejudice for failure to file an expert report. Specifically, appellants contend that
they alleged facts that amount to ordinary negligence and that do not rise to the level
of a health care liability claim, thus Chapter 74 does not apply and no expert report
was required under section 74.351. 

A. Standard of Review and Applicable Law

 We review a trial court's decision on a motion to dismiss a case under section
74.351 for an abuse of discretion. Am. Transitional Care Ctrs. of Tex., Inc., v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of discretion standard in
review of trial court's decision to dismiss under predecessor statute, section 13(e) of
article 4590i); Torres v. Mem'l Hermann Hosp. Sys., 186 S.W.3d 43, 45 (Tex.
App.--Houston [1st Dist.] 2005, no pet.). A trial court abuses its discretion if it acts
arbitrarily, unreasonably, or without reference to guiding rules or principles when it
dismisses a claim. Torres, 186 S.W.3d at 45. However, if resolution of the issue
requires us to construe statutory language, we review under a de novo standard. Id.

 Pursuant to Chapter 74, a "health care liability claim" is

 a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant's claim
or cause of action sounds in tort or contract.


Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (Vernon 2005). A "health care
provider" is "any person, partnership, professional association, corporation, facility,
or institution duly licensed, certified, registered, or chartered by the State of Texas to
provide health care, including: a registered nurse, a dentist, a podiatrist, a pharmacist,
a chiropractor, an optometrist, or a health care institution." Id. § 74.001(a)(12). The
term includes "an employee, independent contractor, or agent of a health care
provider . . . acting in the course and scope of the employment or contractual
relationship." Id. "Health care" is "any act or treatment performed or furnished, or
which should have been performed or furnished, by any health care provider for, to,
or on behalf of a patient during the patient's medical care, treatment, or confinement."
Id. § 74.001(a)(10). "Medical care" is defined as "practicing medicine." Id.
§ 74.001(a)(19). "Safety" is the condition of being secure from danger, harm, or loss.
Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 855 (Tex. 2005).

 To determine whether a cause of action is a "health care liability claim," we
consider the underlying nature of the claim. Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543-44 (Tex. 2004). If the act or omission alleged is an inseparable part
of the rendition of health care services, then the claim is a health care liability claim. 
Id. at 544. One consideration is whether the specialized knowledge of an expert is
required to prove the claim. Id. A plaintiff cannot artfully plead around the
requirements of Chapter 74. See id. at 543. If the cause of action is based on a
breach of the standard of care by a healthcare provider, then the claim is a health care
liability claim, without regard to how it is labeled. Torres, 186 S.W.3d at 47.

 Chapter 74 requires a plaintiff in a health care liability suit to file an expert
report (4) within 120 days of filing the claim. (5) If the plaintiff does not timely serve an
expert report, the trial court must, on the motion of the affected health care provider,
enter an order dismissing the claim with prejudice. (6)

B. Nature of Appellants' Claim

 Here, applying Chapter 74, we determine whether appellants' claim is a "health
care liability claim" by determining whether their cause of action (1) is against a
health care provider and (2) "for treatment, lack of treatment or claimed departure
from accepted standards of medical care, health care, or safety." See Tex. Civ. Prac.
& Rem. Code Ann. § 74.001(a)(13). 

 Appellants' claim is against TIRR, and the parties do not dispute that TIRR is
a health care provider. See id. § 74.001(a)(12). Neither do the parties dispute that
Lilly was acting within the course and scope of her employment at TIRR during the
relevant period. Thus, Lilly is also a health care provider. See id. (including within
definition of "health care provider," an employee, independent contractor, or agent
of health care provider acting within course and scope of employment or contractual
relationship).

 We next consider whether appellants' claim is for "treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, health care, or
safety." See id. § 74.001(a)(13). We consider whether the act or omission alleged is
an inseparable part of the rendition of health care services and whether the specialized
knowledge of an expert is required to prove the claim. Rose, 156 S.W.3d at 544.

 Appellants contend that Anita went to TIRR only for general conditioning and
strength training, and that she fell from a common exercise device known as a balance
board, which is "not a medical device, but rather an ordinary piece of athletic
equipment commonly found in homes, gyms, training facilities, and rehabilitation
facilities, where balance and strengthening exercises are performed." Appellants
contend that Lilly, who happened to be a licensed physical therapist, but could have
been anybody, left Anita, a "frail, elderly woman," standing on an unstable balance
board without any means of support and that this created a dangerous condition which
led to Anita's injuries. Appellants argue that the ordinary negligence of Lilly did not
involve medical care or treatment and that Lilly was simply there to "hold [Anita's]
hand to keep her from falling." 

 Specifically, in their second amended petition, appellants alleged that TIRR,
"by and through the acts of its employee" Lilly, left Anita unattended on the balance
board; failed to provide adequate support to Anita to prevent her from falling from
a balance board; failed to keep watch over Anita while she was standing on the
balance board; failed to properly secure Anita against falling from the balance board;
and created a dangerous condition by leaving Anita standing alone on an unstable
balance board with no means of support. Appellants contend that the allegations of
negligence in this case "are so common, ordinary and understandable by the common
man that no expert testimony is necessary to establish a standard of care, its breach,
or the causal connection with the injuries sustained."

 Appellants assert that this case is analogous to the facts in Rogers v.
Crossroads Nursing Servs., Inc., 13 S.W.3d 417 (Tex. App.--Corpus Christi 1999,
no pet.). In Rogers, the plaintiff was injured when a bag of medical supplies that a
nurse had placed on a table near the plaintiff's bed fell on the plaintiff. Id. at 418. 
The plaintiff sued under a theory of common law negligence. Id. The defendant
argued that a claim based on the negligent placement of a supply bag was a health
care liability claim because it amounted to a claimed departure from accepted
standards of "safety." Id. (construing art. 4590i, § 1.02 (a)(4), the predecessor to
§ 74.001(a)(13)). The trial court agreed and dismissed the plaintiff's claim for failure
to file an expert report. Id. On appeal, the court reversed, concluding that the claim
was not a health care liability claim because the term "safety" must be read in context
to mean "accepted standard of safety within the health care industry" and, because
the placement of a heavy supply bag is not governed by a standard of safety in the
health care industry, but rather by standards of ordinary care, the claim was not a
health care liability claim that required expert testimony Id. at 418-19.

 In the instant case, appellants contend that, like Rogers, Lilly's failure to
supervise Anita while she stood on an unstable balance board violated standards of
ordinary care. (7) However, Rogers is distinguishable from the instant case because
Rogers involves placement of a random item near a person, whereas here, appellants
allege that Anita was negligently supervised by a health care provider while Anita
was engaged in a therapy-exercise that was directed by the health care provider. 

 As TIRR points out, the Supreme Court of Texas has considered the necessity
of expert testimony in a claim of negligent supervision by a physical therapist. 
Rehabilitative Care Sys. of Am. v. Davis, 73 S.W.3d 233, 234 (Tex. 2002). In Davis,
Davis was attending physical therapy after having surgery on his shoulder. 
Rehabilitative Care Sys. of Am. v. Davis, 43 S.W.3d 649, 652 (Tex. App.--Texarkana
2001, pet. denied). During a session in which Davis was working on a weight
machine at the direction of his physical therapist, the therapist left the room. Id. at
653. While Davis was unsupervised, he tore his rotator cuff. Id. At trial, Davis
prevailed on his medical malpractice claim against the rehabilitation center. Id. at
652. On appeal, the rehabilitation center contended that the trial court erred in
denying its motion for an instructed verdict because Davis failed to produce expert
testimony. Id. at 656. The court held that Davis was not required to produce expert
testimony regarding the standard of care required of a physical therapist when the
claim was that of negligent supervision. Id. at 657. The court concluded that the
standard of care was within the comprehension of lay persons. Id. The Supreme
Court of Texas denied the petition for review, but wrote to express its disapproval of
the lower court's conclusion that expert testimony was not required to establish the
appropriate standard of care. Davis, 73 S.W.3d at 234. The court held that "physical-therapist malpractice suits are no different from any other medical-malpractice suit
in that the applicable standard of care must generally be established by expert
testimony." Id. 

 Appellants argue that Davis is distinguishable from the instant case because,
there, the weight machine was complicated and the facts were disputed. We conclude
that Davis is not only persuasive in this case, but that we are bound by the holding of
the Supreme Court that, in a claim of negligent supervision by a physical therapist,
an expert report is required. Id. However, Davis does not address whether a claim
of negligent supervision by a physical therapist is a health care liability claim as
defined in Chapter 74, such that Chapter 74 applies and dismissal of the claim is
appropriate for failure to file an expert report. 

 In Diversicare, which TIRR also relies on, plaintiff Rubio, a resident at a
nursing home, brought claims against the nursing home after she suffered falls and
then was sexually assaulted by another resident. 185 S.W.3d at 845. The suit was
brought on various theories, including negligence in failing to provide adequate
supervision of Rubio. Id. The Supreme Court of Texas held that Rubio's claims were
health care liability claims because the acts or omissions complained of, namely, that
the nursing home failed to properly supervise her and keep her free from harm,
amounted to a claimed departure from accepted standards of health care and safety.
Id. 

 First, the court explained that the supervision of Rubio was inseparable from
the health care and services provided to her. Id. at 849. An integral part of the
services that a nursing home provides is the supervision and monitoring of patient
activities. Id. at 849-50. Health care staff make judgments about the care, treatment,
and protection of individual patients based on the care that a patient requires. Id. at
850. The essence of Rubio's claim was that lapses in professional judgment allowed
her to be injured. Id. at 851. The court then considered whether expert testimony was
required to prove the alleged lapses therein. Id.

 The court also explained that Rubio's claims could also be characterized as
departures from accepted standards of "safety"--within the context of the Medical
Liability and Insurance Improvement Act ("MLIIA") (8)--because the supervision of
Rubio was inseparable from "the accepted standards of safety applicable to the
nursing home." Id. at 855. The court stated that, "Certainly, the Legislature's
inclusion within the scope of the MLIIA of claims based on breaches of accepted
standards of 'safety' expands the scope of the statute beyond what it would be if it
only covered medical and health care." Id. The court concluded that "[p]rofessional
supervision, monitoring, and protection of [a patient] necessarily implicate[s] the
accepted standards of safety under the MLIIA." Id. 

 In the instant case, appellants contend that Anita was not using a medical
device; rather, she just as easily could have been using the balance board at a local
gym. TIRR counters that physical therapy services are not permitted at their facility
without a prescription from a physician and that Anita was undergoing treatment at
TIRR under the direction of a physician. The record does not contain a prescription
covering the period during which Anita fell from the balance board. (9) However,
appended to appellants' response to TIRR's motion to dismiss is the affidavit of Dr.
Sandra Sessoms, Anita's physician of 15 years, who attests that she "asked" Anita to
attend "supervised therapy" at TIRR. It follows that Anita went to TIRR, a
rehabilitation facility, as opposed to a local gym, because she needed the supervision
of a health care provider, at her physician's recommendation. Indeed, an integral part
of the services rendered by TIRR is the supervision of patients during therapy-exercises. See Diversicare, 185 S.W.3d at 849-50. As such, the omission, or failure
to supervise Anita, was an inseparable part of the service being rendered by TIRR,
the health care provider. See id. at 849. In addition, as in Diversicare, because the
"professional supervision" of Anita during treatment is inseparable from the accepted
standards of safety applicable to TIRR, as a rehabilitative health care facility, Anita's
claims are health care liability claims under the safety element of the statute. See
Diversicare, 185 S.W.3d at 855 (discussing former § 1.03(a)(4) of the MLIIA, the
predecessor to Tex. Civ. Prac. & Rem. Code § 74.001(a)(13)). 

 Appellants also assert that Lilly could have been "any lay person." However,
as the court explained in Diversicare, health care staff make judgments about the
care, treatment, and protection of individual patients based on the care that a patient
requires. See id. at 850. Lilly is a licensed physical therapist employed by TIRR to
supervise patients during therapy, such as Anita, whom appellants characterize as a
"frail, elderly woman" or a person with special needs. Proper supervision and
protection of a patient in a weakened condition during physical therapy exercises is
not within the common knowledge of the general public. See id. at 851. Hence, as
the court explained in Diversicare, expert testimony is required to prove the alleged
lapses in professional judgment. See id.; see also Torres, 186 S.W.3d at 48 (rejecting
patient-plaintiff's argument that "the simple act of assisting [her] to the restroom
[while in hospital] . . . is something that could have been done by anyone" and
"would not have required any expertise on the nurse's part that would require expert
testimony in the medical or health field"). 

 Furthermore, in their petition, appellants seek to recover damages from TIRR
based on Anita's death. TIRR contends, and we agree, that only a medical expert can
testify that a breach of the applicable standard of care in this case proximately caused
Anita's death. See Windsor v. Maxwell, 121 S.W.3d 42, 47-48 (Tex. App.--Fort
Worth 2003, pet. denied). 

 We conclude that appellants' suit is a health care liability claim. As such,
appellants' suit is subject to the requirements of Chapter 74. (10) Appellants filed suit
on June 10, 2005. Pursuant to section 74.351, (11) appellants were required to file an
expert report by October 8, 2005. Appellants do not dispute that they did not file an
expert report. We hold that the trial court did not abuse its discretion by dismissing
appellants' case.

 Accordingly, appellant's sole issue is overruled.Conclusion

 We affirm the judgment of the trial court.



 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.
1. 
 
 ' 
 
 § 
 
 §§ - 
2. §§ - 
 
 
3. § 
 §§ - 
 
4. " " 
' 
 
 
 § 
 §§ - 
 
5. § 
 §§ - 
 
6. 
7. 
-- 
 
8. § 
 
§  
9. 
 
 " " 
 " ' " 
 
 " " 
 " " ""
 
" ' " 
 " 
" 
 " " 
 
 ' 
 
10. §§ - 

11. § 
 §§ -