IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
Argued September 
11, 2008
 
            
Justice Medina delivered 
the Court’s judgment and an opinion, in which Justice Hecht joined, and in which Justice Wainwright, Justice Johnson and Justice Willett joined as to Parts I 
& IV.
 
            
Justice Wainwright filed a 
concurring opinion.
 
            
Justice Johnson filed a 
concurring opinion, in which Justice 
Willett joined, and in which Justice Hecht joined as to Parts II and 
III-A, and in which Justice Wainwright 
joined as to Parts I, II, and III-A.
 
            
Chief Justice Jefferson 
filed an opinion concurring in part and dissenting in part, in which Justice Green, Justice Guzman, and Justice Lehrmann joined.
 
            
Justice Guzman filed an 
opinion concurring in part and dissenting in part.
 
 
            
We grant the motion for rehearing, withdraw our previous opinion and 
judgment of August 28, 2009, and substitute the following in its place.
            
In this case we must decide whether a hospital patient’s fall, allegedly 
caused by a defective or unsafe hospital bed, is a health care liability claim 
under former article 4590i of the Revised Civil Statutes.[1] Article 4590i, also known as the Medical 
Liability and Insurance Improvement Act, provides that health care liability 
claims, not accompanied by an expert report, may be dismissed with prejudice 180 
days after filing, although a grace period is available under certain limited 
circumstances. The trial court concluded that the hospital bed claim here was a 
health care liability claim which it then dismissed because of the patient’s 
failure to file a timely expert report. The trial court also denied the 
patient’s request for a grace period. The court of appeals initially disagreed 
with the trial court, concluding that the patient’s claim was not a health care 
liability claim. See Marks v. St. Luke’s Episcopal 
Hosp., 177 S.W.3d 255, 260 (Tex. App.—Houston [1st Dist.] 2005), 
vacated, 193 S.W.3d 575 (Tex. 2006). Following our remand of the 
case, however, the court changed its mind and affirmed the trial court’s 
judgment, with one justice dissenting. 229 S.W.3d 396. 
Because we agree that the underlying cause of action falls under the statutory 
definition of a health care liability claim, we affirm.
I
            
Irving Marks underwent back surgery at St. Luke’s Episcopal Hospital. 
Seven days later, while still recuperating from his surgery, Marks fell in his 
hospital room. He alleges that this fall was caused by the footboard on his 
hospital bed which collapsed as he attempted to use it to push himself from the 
bed to a standing position.
            
Marks sued the hospital, alleging that its negligence contributed to 
cause his fall. He complained that the hospital was negligent in: (1) failing to 
train and supervise its nursing staff properly, (2) failing to provide him with 
the assistance he required for daily living activities, (3) failing to provide 
him with a safe environment in which to recover, and (4) providing a hospital 
bed that had been negligently assembled and maintained by the hospital’s 
employees.
            
The trial court concluded that Marks’s petition asserted health care 
liability claims as defined under the Medical Liability and Insurance 
Improvement Act (“MLIIA”). See Tex. Rev. Civ. Stat. art. 4590i § 1.03(a)(4) (defining health care liability claim).[2] Under the MLIIA, a health care liability 
claim must be substantiated by a timely filed expert report. Id. § 13.01(d). Because Marks failed to file a timely 
expert report, the trial court granted the hospital’s 
motion to dismiss.
            
The court of appeals initially reversed, concluding that Marks’s 
allegations concerned “an unsafe condition created by an item of furniture” and 
thus related to “premises liability, not health care liability[.]” Marks, 177 S.W.3d at 
259. The hospital appealed, filing its petition for review a few days 
before our opinion in Diversicare General 
Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005), another case involving 
the scope of a health care liability claim under the MLIIA. After full briefing, 
we granted the hospital’s petition without reference to the merits and remanded 
the case to the court of appeals for its reconsideration in light of Diversicare. St. Luke’s 
Episcopal Hosp. v. Marks, 193 S.W.3d 575, 575 (Tex. 2006) (per curiam).
            
Following our remand, a divided court of appeals affirmed the trial 
court’s judgment of dismissal for want of a timely filed expert report, 
concluding that Marks had asserted only health care liability claims. 229 S.W.3d at 402. One justice dissented in part, urging that 
Marks’s fourth claim concerning the defective footboard was a premises liability 
claim rather than a health care liability claim under the MLIIA. Id. at 403 (Jennings, J., dissenting in part). We 
granted Marks’s petition for review to consider the issue.
II
            
Several of the allegations in Marks’s trial court pleadings are similar 
to those in Diversicare, a case in which we 
concluded that a nursing-home patient’s sexual assault by another patient was a 
health care liability claim under the MLIIA. Diversicare, 185 S.W.3d at 
842. The allegations there were that the nursing home was negligent in 
failing to provide sufficient staff and supervision to prevent the assault. 
Id. at 845. The trial court held the claim 
barred by the MLIIA’s two-year statute of limitations and granted summary 
judgment for the nursing home. Id. The court of appeals reversed, 
however, concluding the suit was not a statutory health care liability claim, 
but rather a common law negligence claim to which the MLIIA’s limitations 
provision did not apply. Rubio v. Diversicare Gen. 
Partner, Inc., 82 S.W.3d 778, 783–84 (Tex. App.—Corpus Christi 2002), rev’d, 185 S.W.3d 842 (Tex. 2005). We disagreed, 
holding that the law suit was indeed a health care liability claim as determined 
by the trial court. Diversicare, 185 S.W.3d at 849.
            
We noted that nursing homes provide services to their residents that 
include supervision of daily activities, routine examinations, monitoring of the 
residents’ physical and mental condition, administering medication, “and meeting 
the fundamental care needs of the residents.” Id. We further noted that 
these services are provided by professional staff, and “[t]he level and types of 
health care services provided vary with the needs and capabilities, both 
physical and mental, of the patients.” Id. at 849–50 (citing Harris v. 
Harris County Hosp. Dist., 557 S.W.2d 353, 355 (Tex. Civ. App.—Houston [1st 
Dist.] 1977, no writ)). We then reasoned that those services, including the 
monitoring and protection of the patient, as well as training and staffing 
policies, were “integral components of Diversicare’s 
rendition of health care services[.]” Id. at 
850.
            
Marks’s first three claims—failing to properly train and supervise its 
agents, employees, servants, and nursing staff when caring for him; failing to 
provide him with the assistance he required for daily living activities; and 
failing to provide him a safe environment in which to receive treatment and 
recover—similarly involve patient supervision and staff training. As in Diversicare, this type of claim asserts a departure 
from the accepted standard of health care and is therefore a health care 
liability claim under the MLIIA.
            
Marks argues that his hospital bed claim is 
different, however. He alleges that the hospital was negligent either in the 
assembly or maintenance of the bed, or both, and that the defectively attached 
footboard presented an unsafe condition in the nature of a premises liability 
claim rather than a health care liability claim. Marks 
submits that his defective bed claim involves ordinary negligence rather 
than a departure from accepted standards of health care or safety.
            
The hospital responds that Marks’s hospital bed was an inextricable part 
of his care and treatment during his inpatient convalescence from back surgery. 
As such, the hospital submits that any defect in the bed, or any danger it posed 
to the patient, implicated a departure from accepted standards of health care or 
safety and was accordingly a health care liability claim under the MLIIA.
            
The MLIIA defines a “health care liability claim” as:
 
a cause of 
action against a health care provider or physician for treatment, lack of 
treatment, or other claimed departure from accepted standards of medical care or 
health care or safety which proximately results in injury to or death of the 
patient, whether the patient’s claim or cause of action sounds in tort or 
contract.
 
Tex. Rev. Civ. Stat. art. 4590i § 1.03(a)(4). Under this definition, a health care liability claim 
consists of three elements. First, a physician or a health care provider must be 
the defendant. Second, the suit must be about the patient’s treatment, lack of 
treatment, or some other departure from accepted standards of medical care or 
health care or safety. And, third, the defendant’s act, omission, or other 
departure must proximately cause the patient’s injury or death. The dispute here 
is over the second element, that is, whether the hospital’s alleged failure to 
provide its patient a safe bed implicates certain accepted standards embodied in 
the definition of a health care liability claim.
            
The statute provides some information about these standards through its 
definitions of medical care and health care. The MLIIA defines “medical care” as 
the practice of medicine, including the diagnosis and treatment by a licensed 
physician, and “health care” as “any act or treatment performed or furnished, or 
which should have been performed or furnished, by any health care provider for, 
to, or on behalf of a patient during the patient’s medical care, treatment, or 
confinement.” Id. § 1.03(a)(2),(6). These 
definitions indicate then that physicians provide medical care, and that health 
care providers, which includes hospitals and their employees, provide other 
health care services. A “claimed departure from accepted standards of medical 
care or health care” thus implicates the professional standards of these 
respective care givers. See Diversicare, 185 
S.W.3d at 850 (noting that the “health care standard applies the ordinary care 
of trained and experienced medical professionals to the treatment of 
patients”).
            
The statute, however, does not define the term “safety” and thus does not 
provide similar insight into the meaning of a “claimed departure from accepted 
standards of . . . safety.” We noted this in Diversicare, while observing that the inclusion of 
accepted standards of safety nevertheless expanded the statute’s scope beyond 
standards of medical care and health care. Diversicare, 185 S.W.3d at 
855. How much it expanded the statute’s scope we did not say because the 
claim there involved a departure from accepted standards of health care more so 
than safety. Id. Marks’s present claim, however, focuses on the safety 
element, that is, whether a patient injury caused by an allegedly defective 
hospital bed represents a “claimed departure from accepted standards of . . . 
safety” within the statute’s definition of a “health care liability claim.” 
See Tex. Rev. 
Civ. Stat. art. 4590i § 
1.03(a)(4) (defining health care liability claim).
III
            
The nature of the safety-related claims the Legislature intended to 
include under the MLIIA is a matter of statutory construction, a legal question 
we review de novo. City of Garland v. Dallas Morning 
News, 22 S.W.3d 351, 357 (Tex. 2000). When construing a statute, 
words and phrases are read in context and construed according to the rules of 
grammar and common usage. Tex. Gov’t Code § 
311.011(a). Words that are not defined are given their 
ordinary meaning unless a contrary intention is apparent from the context, or 
unless such a construction leads to absurd results. City of 
Rockwall v. Hughes, 246 S.W.3d 621, 625–26 (Tex. 2008). When 
possible, the Legislature’s intent is drawn from the plain meaning of the words 
chosen, State v. Shumake, 199 S.W.3d 279, 284 
(Tex. 2006), giving effect to all words so that none of the statute’s language 
is treated as surplusage. Cont’l Cas. Ins. Co. v. Functional Restoration Assocs., 19 
S.W.3d 393, 402 (Tex. 2000). Our ultimate goal, however, is to understand the 
Legislature’s intent and apply that intent according to the statute’s purpose. 
Tex. Gov’t Code § 312.005; 
see also City of LaPorte v. 
Barfield, 898 S.W.2d 288, 292 (Tex. 1995) (referring to legislative intent 
as the “polestar of statutory construction”).
            
The Legislature’s stated purpose in enacting article 4590i was to remedy 
“a medical malpractice insurance crisis” in Texas and its “material adverse 
effect on the delivery of medical and health care services in Texas[.]” Tex. Rev. Civ. Stat. 
art. 4590i § 1.02(a)(5)–(6). This 
concern pervades the statute which is replete with references to medical 
liability, health care, and malpractice, all of which implicate medical or 
health care judgments made by professionals. See, 
e.g., id. § 13.01(r)(5)–(6) 
(requiring expert to have knowledge of medical diagnosis, care, and treatment); 
see also Aviles v. Aguirre, 292 S.W.3d 648, 649 (Tex. 2009) (per 
curiam) (noting that virtually all of the legislative 
findings expressed in the statute relate to the cost of malpractice insurance). 
The MLIIA, however, defines a health care liability claim not only in terms of 
the specific standards of medical care and health care, but also in terms of an 
apparently more general standard of safety. Id. § 103(a)(4).
            
We do not consider the term “safety” in isolation, however, but in the 
context of the statute. City of San Antonio v. Boerne, 
111 S.W.3d 22, 25 (Tex. 2003). Moreover, the principle of ejusdem generis warns against expansive interpretations of 
broad language that immediately follows narrow and specific terms, and counsels 
us to construe the broad in light of the narrow. See Hilco Elec. Coop. v. Midlothian Butane Gas Co., 111 
S.W.3d 75, 81 (Tex. 2003) (observing that when words of a general nature are 
used in connection with the designation of particular objects, persons, or 
things, the meaning of the general words should conform to the more particular 
designation). The principle is sound advice here as every patient injury in a 
hospital, regardless of cause, may be said to implicate patient safety in the 
broad sense of the word.
            
The Legislature, however, could not have intended that standards of 
safety encompass all negligent injuries to patients. Such a broad interpretation 
of the safety standard would render the statute’s more specific standards of 
medical and health care unnecessary, and we do “not read statutory language to 
be pointless if it is reasonably susceptible of another construction.” City 
of LaPorte, 898 S.W.2d at 292 (citing Chevron 
Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987). 
Moreover, given the object of the statute and the Legislature’s express concern, 
it is apparent that the Legislature did not intend for standards of safety to 
extend to every negligent injury that might befall a patient. See Tex. Rev. Civ. Stat. art. 4590i § 1.02(b)(3) (reciting Legislature’s intent that the statute operate 
to control medical malpractice insurance costs without unduly restricting 
a patient’s rights). Applying the principle of ejusdem 
generis, we conclude that standards of safety must be construed in light of the 
other standards of medical and health care, standards that are directly related 
to the patient’s care and treatment. We said as much in Diversicare.
            
We noted there that not every accidental injury to a patient in a health 
care setting would constitute a health care liability claim under article 4590i. 
Diversicare, 185 S.W.3d at 854 (suggesting that 
unsafe conditions unrelated to the provision of health care might not be a 
health care liability claim). We further observed that standards of medical care 
or health care were implicated when the negligent act or omission was an 
inseparable or integral part of the rendition of medical services. Diversicare, 185 S.W.3d at 
848–49. Similarly, an accepted standard of safety is implicated under the 
MLIIA when the unsafe condition or thing, causing injury to the patient, is an 
inseparable or integral part of the patient’s care or treatment.
            
The determination of whether a cause of action is a health care liability 
claim therefore requires an examination of the claim’s underlying nature. 
Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004). 
As we indicated in Diversicare, it is the 
gravamen of the claim, not the form of the pleadings, 
that controls this determination. See Diversicare, 185 S.W.3d at 854. 
Whether the underlying claim involves a health care provider’s negligent act or 
omission, or the patient’s exposure to some other safety risk, the relationship 
between the injury causing event and the patient’s care or treatment must be 
substantial and direct for the cause of action to be a health care liability 
claim under the MLIIA. See Garland Cmty. Hosp, 
156 S.W.3d at 544 (observing the complaint must concern an act or omission that 
“is an inseparable part of the rendition of health care services”).
            
Marks alleges that his injury here was caused by 
the hospital’s improper maintenance or assembly of his hospital bed. At its 
core, this claim alleges the failure of a piece of equipment provided during 
Marks’s inpatient care. Medical equipment specific to a particular patient’s 
care or treatment is an integral and inseparable part of the health care 
services provided. When the unsafe or defective condition of that equipment 
injures the patient, the gravamen of the resulting cause of action is a health 
care liability claim.
IV
            
Although we conclude that Marks’s claims here involve health care 
liability, a question remains concerning their dismissal. Marks argues that his complaint should not have been 
dismissed because he was entitled to additional time to provide an expert 
report. Article 4590i generally requires a claimant to furnish an expert report 
within 180 days after the filing of a health care liability claim. Tex. Rev. Civ. Stat. art. 4590i, § l3.0l (d). If a claimant fails to comply with this 
requirement, the court is directed, on motion, to award appropriate costs and 
fees and to dismiss the health care liability claim with prejudice. Id. § 13.01(e). The 180-day period can be extended, 
however, for good cause and enlarged for accidents and mistakes. Id. § 
13.01(f),(g). The latter enlargement is referenced in 
the statute as a grace period.
            
Marks contends that he was entitled to this 
grace period because his failure to file the expert report on time was an 
accident or mistake within section 13.01(g)’s meaning. That section provides for 
a thirty day grace period if, after a hearing, the court finds that the 
claimant’s failure to file a timely expert report was a mistake or accident 
rather than intentional or the result of conscious indifference.[3] After hearing the Hospital’s motion to 
dismiss and Marks’s motion for a grace period, the trial court found that 
Marks’s failure was not an accident or mistake and dismissed the suit. We review 
that dismissal under an abuse of discretion standard. Am. 
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 
46 S.W.3d 873, 875 (Tex. 2001).
            
In support of Marks’s motion for grace period, Marks’s attorney, James E. 
Doyle, provided his affidavit. Doyle averred that he was Marks’s second 
attorney, becoming lead counsel about seven months after the first attorney 
filed the case. Doyle further averred that he and Marks’s first attorney 
“understood the case to be an ordinary negligence case, not a health care 
liability claim” at that time. According to Doyle’s affidavit, it was only after 
discovery that he determined that Marks also had a potential health care 
liability claim, causing him to amend the pleadings and provide an expert 
report. This report was provided more than 500 days after the filing of Marks’s 
original petition.
            
The amended petition divided Marks’s claims under headings of 
“Negligence” and “Premises Liability.” The original petition had lumped all claims under a single “Negligence” heading. In the 
amended pleading, Marks included complaints about his bed, his care, and his 
supervision under the “Negligence” heading. Under the “Premises Liability” 
heading, Marks complained about the condition of the hospital bed. Doyle avers 
that up until the time he filed the amended pleading, he “believed that the case 
presented claims sounding only in ordinary negligence.”
            
In our view, there is no significant difference between the original and 
the amended pleading. The underlying factual complaint in both concern the same 
set of circumstances: inadequate care and supervision by the Hospital’s 
professional staff and a dangerous hospital bed. “It is well settled that a 
health care liability claim cannot be recast as another cause of action to avoid 
the requirements of [article 4590i].” Diversicare, 185 S.W.3d at 
851. Determining whether a pleading states a health care liability claim 
thus depends on its underlying substance, not its form. It is not apparent from 
Doyle’s affidavit what caused him to recognize for the first time that his 
client had a health care liability claim.
            
Equally significant, however, is the absence of any evidence explaining 
the first attorney’s failure to furnish an expert report during the first seven 
months he represented Marks. Doyle’s affidavit suggests that the first attorney 
also mistakenly believed that the original petition did not implicate article 
4590i. According to the affidavit, Doyle’s belief is based on his review of the 
case file he inherited. Affidavits, however, must be based on personal 
knowledge, not supposition. See Tex. R. Evid. 602 (“A witness may not 
testify to a matter unless . . . the witness has personal knowledge of the 
matter.”). An affidavit not based on personal knowledge is legally insufficient. 
Kerlin v. Arias, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). Because Doyle had no personal knowledge of 
the first lawyer’s intent, and the first lawyer did not provide his own 
affidavit explaining his failure, there is no evidence of mistake or accident 
and thus no basis for the requested grace period. Accordingly, the trial court 
did not abuse its discretion in denying Marks’s motion for grace period under 
section 13.01(g) and did not err in dismissing Mark’s health care liability 
claims. See Tex. Rev. Civ. Stat. 
art. 4590i § 13.01(e)(3) 
(dismissal is “with prejudice to the claims refiling”).
* 
* *
            
Because the provision of a safe hospital bed was an inseparable part of 
the health care services provided during Marks’s convalescence from back 
surgery, we conclude that his cause of action for injuries allegedly caused by 
the unsafe bed is a health care liability claim under article 4590i. We further 
agree that the trial court did not abuse its discretion in refusing Marks’s 
request for additional time to file the requisite expert report and accordingly 
affirm the court of appeals’ judgment.
 
 
                                                                                                                        
            
______________________________
                                                                                                                                    
David M. Medina
                                                                                                                                    
Justice
 
 
 
OPINION DELIVERED: August 27, 
2010






[1] 
See 
Medical Liability and Insurance Improvement Act 
of Texas, Act of May 30, 1977, 65th Leg., R.S., ch. 
817, 1977 Tex. Gen. Laws 2039, amended by Act of May 18, 1979, 66th Leg., R.S., 
ch. 596, 1979 Tex. Gen. Laws 1259, amended by Act of 
May 26, 1989, 71st Leg., R.S., ch. 1027, §§ 27, 28, 
1989 Tex. Gen. Laws 4128, 4145, amended by Act of March 21, 1991, 72d Leg., 
R.S., ch. 14, § 284, 1991 Tex. Gen. Laws 42, 222, 
amended by Act of May 25, 1993, 73d Leg., R.S., ch. 
625, 1993 Tex. Gen. Laws 2347, amended by Act of May 5, 1995, 74th Leg., R.S., 
ch. 140, 1995 Tex. Gen. Laws 985,amended by Act of 
June 1, 1997, 75th Leg., R.S., ch. 1228, 1997 Tex. 
Gen. Laws 4693, amended by Act of June 2, 1997, 75th Leg., R.S., ch. 1396, §§ 44, 45, 1997 Tex. Gen. Laws 5202, 5249, amended 
by Act of May 13, 1999, 76th Leg., R.S., ch. 242, 1999 
Tex. Gen. Laws 1104, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 
884.

[2] 
Article 4590i was repealed after the filing of 
this case. See n.1 supra. Similar 
medical liability legislation is now codified in Chapter 74 of the Texas Civil 
Practice and Remedies Code, affecting actions filed on or after September 1, 
2003. See Tex. Civ. Prac. & Rem. Code §§ 
74.301–.303.

[3] 
Section 13.01(g) of article 4590i 
provides:
 
Notwithstanding any other provision of this section, if 
a claimant has failed to comply with a deadline [for filing the expert report] 
established by Subsection (d) of this section and after hearing the court finds 
that the failure of the claimant or the claimant's attorney was not intentional 
or the result of conscious indifference but was the result of an accident or 
mistake, the court shall grant a grace period of 30 days to permit the claimant 
to comply with that subsection. A motion by a claimant for relief under this 
subsection shall be considered timely if it is filed before any hearing on a 
motion by a defendant under Subsection (e) of this 
section.