**Walter M. CLARK, Audra M. Clark and Angela Miranda–Clark, Individually and as Representatives of the Estate of Anita M. Clark, Deceased, Appellants,**

v.

**TIRR REHABILITATION CENTER, Appellee.**

No. 01–06–00652–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 15, 2007.

Philip F. Klosowsky, Klosowsky Law Offices, Sugar Land, for Appellant.

Marion W. Kruse, Kruse Law Firm, P.C., Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellants, Walter M. Clark, Audra Clark, and Angela Miranda–Clark, in their individual capacities and on behalf of the estate of Anita M. Clark, deceased, appeal an order dismissing their suit against appellee, TIRR Rehabilitation Center ("TIRR"). In one issue, appellants contend that the trial court erred by dismissing their suit with prejudice for failure to file an expert report as required by section 74.351 of the Texas Civil Practice and Remedies Code.[1]

We affirm.

1. Section 74.351(a), which addresses dismissal of health care liability claims for failure to file an expert report, applies only to a cause of action that accrued after September 1,

## Background

In 2003, Anita Clark, a 64–year–old woman with osteoporosis, was undergoing physical therapy at TIRR under the direction of Susan Lilly, a licensed physical therapist and employee of TIRR. On June 12, 2003, Anita was standing on an apparatus known as a "balance board," as directed by Lilly. At some point, Lilly turned away from Anita, leaving her physically unsupported. Anita fell from the balance board and fractured her pelvis in four places. On March 27, 2004, Anita died, allegedly from complications stemming from the fall.

Appellants sued TIRR for negligence. Appellants filed their original petition on June 10, 2005, an amended petition on November 3, 2005, and a second amended petition on March 3, 2006. In their second amended petition, appellants alleged that TIRR, "by and through the acts of its employee," Lilly, left Anita unattended on the balance board; failed to provide adequate support to Anita to prevent her from falling from a balance board; failed to keep watch over Anita while she was standing on the balance board; failed to properly secure Anita against falling from the balance board; and created a dangerous condition by leaving Anita standing alone on an unstable balance board with no means of support. Appellants argued that TIRR's negligence proximately caused serious and permanent injuries to Anita, which ultimately resulted in her premature death. Appellants did not file an expert report.

On December 21, 2005, TIRR moved to dismiss appellants' suit on the basis that it was a healthcare liability claim and therefore subject to the requirements of Chapter 74 of the Civil Practice and Remedies Code ("Chapter 74").[2] TIRR argued that section 74.351 requires a plaintiff in a health care liability suit to file an expert report within 120 days of filing a claim and that, because appellants failed to file an expert report by October 8, 2005, the trial court was required to dismiss the suit.[3]

In their response to TIRR's motion to dismiss, appellants argued that an expert report is not required in this case because Chapter 74 does not apply to physical therapists and because appellants have not alleged a health care liability claim. Appellants argued that their suit was for ordinary negligence and that medical expertise was not required to establish a breach of the standard of care. The trial court granted TIRR's motion and dismissed the suit with prejudice. Appellants moved for a new trial, which the trial court denied. This appeal followed.

## Analysis

■ In one issue, appellants contend that the trial court erred in dismissing their suit with prejudice for failure to file an expert report. Specifically, appellants contend that they alleged facts that amount to ordinary negligence and that do

2005, the effective date of the amendments. Here, appellants' cause of action accrued prior to September 1, 2005. Accordingly, we apply the former version of section 74.351 in this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590.

2. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507 (Vernon 2005 and Supp.2006) (applying to cause of action *filed* after September 1, 2003, except as otherwise provided by specific provision).

3. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590.

not rise to the level of a health care liability claim, thus Chapter 74 does not apply and no expert report was required under section 74.351.

## A. Standard of Review and Applicable Law

We review a trial court's decision on a motion to dismiss a case under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc., v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (applying abuse of discretion standard in review of trial court's decision to dismiss under predecessor statute, section 13(e) of article 4590i); *Torres v. Mem'l Hermann Hosp. Sys.,* 186 S.W.3d 43, 45 (Tex.App.-Houston [1st Dist.] 2005, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles when it dismisses a claim. *Torres,* 186 S.W.3d at 45. However, if resolution of the issue requires us to construe statutory language, we review under a de novo standard. *Id.*

Pursuant to Chapter 74, a "health care liability claim" is

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code § 74.001(a)(13) (Vernon 2005). A "health care provider" is "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: a registered nurse, a dentist, a podiatrist, a pharmacist, a chiropractor, an optometrist, or a health care institution." *Id.* § 74.001(a)(12). The term includes "an employee, independent contractor, or agent of a health care provider ... acting in the course and scope of the employment or contractual relationship." *Id.* "Health care" is "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10). "Medical care" is defined as "practicing medicine." *Id.* § 74.001(a)(19). "Safety" is the condition of being secure from danger, harm, or loss. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 855 (Tex.2005).

To determine whether a cause of action is a "health care liability claim," we consider the underlying nature of the claim. *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543–44 (Tex.2004). If the act or omission alleged is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *Id.* at 544. One consideration is whether the specialized knowledge of an expert is required to prove the claim. *Id.* A plaintiff cannot artfully plead around the requirements of Chapter 74. *See id.* at 543. If the cause of action is based on a breach of the standard of care by a healthcare provider, then the claim is a health care liability claim, without regard to how it is labeled. *Torres,* 186 S.W.3d at 47.

Chapter 74 requires a plaintiff in a health care liability suit to file an expert report[4] within 120 days of filing the claim.[5]

---

4. An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the stan-

If the plaintiff does not timely serve an expert report, the trial court must, on the motion of the affected health care provider, enter an order dismissing the claim with prejudice.[6]

## B. Nature of Appellants' Claim

Here, applying Chapter 74, we determine whether appellants' claim is a "health care liability claim" by determining whether their cause of action (1) is against a health care provider and (2) "for treatment, lack of treatment or claimed departure from accepted standards of medical care, health care, or safety." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13).

Appellants' claim is against TIRR, and the parties do not dispute that TIRR is a health care provider. *See id.* § 74.001(a)(12). Neither do the parties dispute that Lilly was acting within the course and scope of her employment at TIRR during the relevant period. Thus, Lilly is also a health care provider. *See id.* (including within definition of "health care provider," an employee, independent contractor, or agent of health care provider acting within course and scope of employment or contractual relationship).

We next consider whether appellants' claim is for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety." *See id.* § 74.001(a)(13). We consider whether the act or omission alleged is an inseparable part of the rendition of health care services and whether the specialized knowledge of an expert is required to prove the claim. *Rose*, 156 S.W.3d at 544.

Appellants contend that Anita went to TIRR only for general conditioning and strength training, and that she fell from a common exercise device known as a balance board, which is "not a medical device, but rather an ordinary piece of athletic equipment commonly found in homes, gyms, training facilities, and rehabilitation facilities, where balance and strengthening exercises are performed." Appellants contend that Lilly, who happened to be a licensed physical therapist, but could have been anybody, left Anita, a "frail, elderly woman," standing on an unstable balance board without any means of support and that this created a dangerous condition which led to Anita's injuries. Appellants argue that the ordinary negligence of Lilly did not involve medical care or treatment and that Lilly was simply there to "hold [Anita's] hand to keep her from falling."

Specifically, in their second amended petition, appellants alleged that TIRR, "by and through the acts of its employee" Lilly, left Anita unattended on the balance board; failed to provide adequate support to Anita to prevent her from falling from a balance board; failed to keep watch over Anita while she was standing on the balance board; failed to properly secure Anita against falling from the balance board; and created a dangerous condition by leaving Anita standing alone on an unstable balance board with no means of support. Appellants contend that the allegations of negligence in this case "are so common, ordinary and understandable by the com-

---

5. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590.

6. *See id.*

---

dards, and the causal relationship between that failure and the harm claimed. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1590.

mon man that no expert testimony is necessary to establish a standard of care, its breach, or the causal connection with the injuries sustained."

Appellants assert that this case is analogous to the facts in *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417 (Tex. App.-Corpus Christi 1999, no pet.). In *Rogers*, the plaintiff was injured when a bag of medical supplies that a nurse had placed on a table near the plaintiff's bed fell on the plaintiff. *Id.* at 418. The plaintiff sued under a theory of common law negligence. *Id.* The defendant argued that a claim based on the negligent placement of a supply bag was a health care liability claim because it amounted to a claimed departure from accepted standards of "safety." *Id.* (construing art. 4590i, § 1.02(a)(4), the predecessor to § 74.001(a)(13)). The trial court agreed and dismissed the plaintiff's claim for failure to file an expert report. *Id.* On appeal, the court reversed, concluding that the claim was not a health care liability claim because the term "safety" must be read in context to mean "accepted standard of safety *within the health care industry*" and, because the placement of a heavy supply bag is not governed by a standard of safety in the health care industry, but rather by standards of ordinary care, the claim was not a health care liability claim that required expert testimony *Id.* at 418–19.

In the instant case, appellants contend that, like *Rogers*, Lilly's failure to supervise Anita while she stood on an unstable balance board violated standards of ordinary care.[7] However, *Rogers* is distinguishable from the instant case because *Rogers* involves placement of a random item near a person, whereas here, appel-

lants allege that Anita was negligently supervised by a health care provider while Anita was engaged in a therapy-exercise that was directed by the health care provider.

As TIRR points out, the Supreme Court of Texas has considered the necessity of expert testimony in a claim of negligent supervision by a physical therapist. *Rehabilitative Care Sys. of Am. v. Davis*, 73 S.W.3d 233, 234 (Tex.2002). In *Davis*, Davis was attending physical therapy after having surgery on his shoulder. *Rehabilitative Care Sys. of Am. v. Davis*, 43 S.W.3d 649, 652 (Tex.App.-Texarkana 2001, pet. denied). During a session in which Davis was working on a weight machine at the direction of his physical therapist, the therapist left the room. *Id.* at 653. While Davis was unsupervised, he tore his rotator cuff. *Id.* At trial, Davis prevailed on his medical malpractice claim against the rehabilitation center. *Id.* at 652. On appeal, the rehabilitation center contended that the trial court erred in denying its motion for an instructed verdict because Davis failed to produce expert testimony. *Id.* at 656. The court held that Davis was not required to produce expert testimony regarding the standard of care required of a physical therapist when the claim was that of negligent supervision. *Id.* at 657. The court concluded that the standard of care was within the comprehension of lay persons. *Id.* The Supreme Court of Texas denied the petition for review, but wrote to express its disapproval of the lower court's conclusion that expert testimony was not required to establish the appropriate standard of care. *Davis*, 73 S.W.3d at 234. The court held that "physical-therapist malpractice suits are no different from any other medical-

---

**7.** Appellants also rely on *Marks v. St. Luke's Episcopal Hosp.*, 177 S.W.3d 255 (Tex.App.-Houston [1st Dist.] 2005), *vacated*, 193 S.W.3d 575 (Tex.2006). However, this reliance is misplaced because the opinion has been vacated.

malpractice suit in that the applicable standard of care must generally be established by expert testimony." *Id.*

Appellants argue that *Davis* is distinguishable from the instant case because, there, the weight machine was complicated and the facts were disputed. We conclude that *Davis* is not only persuasive in this case, but that we are bound by the holding of the Supreme Court that, in a claim of negligent supervision by a physical therapist, an expert report is required. *Id.* However, *Davis* does not address whether a claim of negligent supervision by a physical therapist is a health care liability claim as defined in Chapter 74, such that Chapter 74 applies and dismissal of the claim is appropriate for failure to file an expert report.

In *Diversicare*, which TIRR also relies on, plaintiff Rubio, a resident at a nursing home, brought claims against the nursing home after she suffered falls and then was sexually assaulted by another resident. 185 S.W.3d at 845. The suit was brought on various theories, including negligence in failing to provide adequate supervision of Rubio. *Id.* The Supreme Court of Texas held that Rubio's claims were health care liability claims because the acts or omissions complained of, namely, that the nursing home failed to properly supervise her and keep her free from harm, amounted to a claimed departure from accepted standards of health care and safety. *Id.*

First, the court explained that the supervision of Rubio was inseparable from the health care and services provided to her. *Id.* at 849. An integral part of the services that a nursing home provides is the supervision and monitoring of patient activities. *Id.* at 849–50. Health care staff make judgments about the care, treatment, and protection of individual patients based on the care that a patient requires. *Id.* at 850. The essence of Rubio's claim was that lapses in professional judgment allowed her to be injured. *Id.* at 851. The court then considered whether expert testimony was required to prove the alleged lapses therein. *Id.*

The court also explained that Rubio's claims could also be characterized as departures from accepted standards of "safety"—*within the context of* the Medical Liability and Insurance Improvement Act ("MLIIA") [8]—because the supervision of Rubio was inseparable from "the accepted standards of safety applicable to the nursing home." *Id.* at 855. The court stated that, "Certainly, the Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care." *Id.* The court concluded that "[p]rofessional supervision, monitoring, and protection of [a patient] necessarily implicate[s] the accepted standards of safety under the MLIIA." *Id.*

In the instant case, appellants contend that Anita was not using a medical device; rather, she just as easily could have been using the balance board at a local gym. TIRR counters that physical therapy services are not permitted at their facility without a prescription from a physician and that Anita was undergoing treatment at TIRR under the direction of a physician. The record does not contain a prescription covering the period during which Anita fell from the balance board.[9] How-

---

8. *See* Act of April 19, 1977, 65th Leg., R.S., ch. 817, Part 1, § 1, sec. 13.01, 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847.

9. However, the record shows that, in 2002, Anita went to TIRR for physical therapy based on the prescription of her primary care physician, Dr. Martha Gerteisen. The TIRR "Evaluation Summary" to Dr. Gerteisen, per-

ever, appended to appellants' response to TIRR's motion to dismiss is the affidavit of Dr. Sandra Sessoms, Anita's physician of 15 years, who attests that she "asked" Anita to attend "supervised therapy" at TIRR. It follows that Anita went to TIRR, a rehabilitation facility, as opposed to a local gym, because she needed the supervision of a health care provider, at her physician's recommendation. Indeed, an integral part of the services rendered by TIRR is the supervision of patients during therapy-exercises. *See Diversicare*, 185 S.W.3d at 849–50. As such, the omission, or failure to supervise Anita, was an inseparable part of the service being rendered by TIRR, the health care provider. *See id.* at 849. In addition, as in *Diversicare*, because the "professional supervision" of Anita during treatment is inseparable from the accepted standards of safety applicable to TIRR, as a rehabilitative health care facility, Anita's claims are health care liability claims under the safety element of the statute. *See Diversicare*, 185 S.W.3d at 855 (discussing former § 1.03(a)(4) of the MLIIA, the predecessor to TEX. CIV. PRAC. & REM.CODE § 74.001(a)(13)).

Appellants also assert that Lilly could have been "any lay person." However, as the court explained in *Diversicare*, health care staff make judgments about the care, treatment, and protection of individual patients based on the care that a patient requires. *See id.* at 850. Lilly is a licensed physical therapist employed by TIRR to supervise patients during therapy, such as Anita, whom appellants characterize as a "frail, elderly woman" or a person with special needs. Proper supervision and protection of a patient in a weakened condition during physical therapy exercises is not within the common knowledge of the general public. *See id.* at 851. Hence, as the court explained in *Diversicare*, expert testimony is required to prove the alleged lapses in professional judgment. *See id.; see also Torres*, 186 S.W.3d at 48 (rejecting patient-plaintiff's argument that "the simple act of assisting [her] to the restroom [while in hospital] ... is something that could have been done by anyone" and "would not have required any expertise on the nurse's part that would require expert testimony in the medical or health field").

Furthermore, in their petition, appellants seek to recover damages from TIRR based on Anita's *death*. TIRR contends, and we agree, that only a medical expert can testify that a breach of the applicable standard of care in this case proximately caused Anita's death. *See Windsor v. Maxwell*, 121 S.W.3d 42, 47–48 (Tex.App.-Fort Worth 2003, pet. denied).

We conclude that appellants' suit is a health care liability claim. As such, appellants' suit is subject to the requirements of Chapter 74.[10] Appellants filed suit on

---

formed by Lilly on April 4, 2002, states that "Your patient's diagnosis requiring treatment is CERVICAL OA." The summary notes that Anita reported pain in her neck and spine which restricted her ability to turn her head for functional activities. The "Plan of Care" was that Anita would be seen "2 times per week for 8 weeks as per prescription." The "treatment" included therapeutic and stabilization exercises. A reassessment was to be completed "at the end of this prescription or at the time of [Anita's] next physician visit." The Summary concludes with, "Thank you for allowing us to contribute to the care of your patient." The report then asks the physician to sign that the treatment plan is to be implemented and that "[t]he program outlined above is medically necessary." Dr. Gerteisen signed the Summary on April 12, 2002. The record shows that, on April 26, 2002, treatment was successful and was discontinued. Anita's fall occurred in June of 2003.

10. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005 and Supp. 2006).

June 10, 2005. Pursuant to section 74.351,[11] appellants were required to file an expert report by October 8, 2005. Appellants do not dispute that they did not file an expert report. We hold that the trial court did not abuse its discretion by dismissing appellants' case.

Accordingly, appellant's sole issue is overruled.

### Conclusion

We affirm the judgment of the trial court.

---

**11.** *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590, 1591.